# 1069-15

In The Court of Criminal Appeals

of Texas

Petition For Discretionary Review

PD-1069-15

**RECEIVED IN**
**COURT OF CRIMINAL APPEALS**

NOV 20 2015

Abel Acosta, Clerk

The Seventh Court of Appeals

From Amarillo state of Texas

Cause Number : 07-13-60088-CR

FILED IN
COURT OF CRIMINAL APPEALS

NOV 20 2015

Abel Acosta, Clerk

The 364Th District Court

From Lubbock, Texas

Trial Cause No. 2011-431,252

Joey Balero #1848915

Coffield Unit

2661 FM 2054

Tennessee Colony, Tx. 75884

prose-Applicant

I

## Identity of Parties

Honorable Judge Underwood
304Th District Court
Lubbock, Texas

Office of The District Attorney
Lubbock-County
Lubbock, Texas

Defense Counsel


Appeal Counsel
Mark Skelton
1504 Main St.
Lubbock, Texas  79409

Applicant
Joey Balero # 1848915
Coffield Unit
2661 FM 2054
Tennessee Colony, Tx. 75884

# Table of Contents

Page

Cover Page — — — — — — — — — — — — — — — — — — — I

Identity of Parties — — — — — — — — — — — — — — — — II

Table of Contents — — — — — — — — — — — — — — — III

Index of Authorities

Statement Regarding Oral Argument — — — — — — — — — 1

Statement of the Case — — — — — — — — — — — — — 2

Statement of Procedural History — — — — — — — — — 2

Grounds For Review — — — — — — — — — — — — — — 3

Argument of The Issue — — — — — — — — — — — — — 3

Prayer — — — — — — — — — — — — — — — — — — — 9

Appendix   Memorandum Opinion

# Index of Authorities

Page

Balero V. state, No. 07-13-0008-CR (Tex. App.-Amarillo tex 2014 — — — — — — — — — — — — — — — — — — — — — — — 2

Berryhill V. state, 501 S.W. 2d 86-87 (Tex. Crim. App. 1973) — — — — — — 9

Brooks V. state, 323 3d 893, 912 (Tex. Crim. App. 2010) — — — — — — 8

Cooks V. state, 844 S.W. 2d 697, 728 (1992) — — — — — — — — — 9

Jackson V. Virginia, 99 s. ct. 278 (1979) — — — — — — — — — — 7

## Statement Regarding Oral Argument

Applicant in this pleading is an incarcerated, pro se applicant who has no medium of exchange to hire counsel for representation. Therefore, waves oral argument. (Note: This pleading is timely filed due to Applicant's request (Habeas Corpus Writ Filed /granted under T.C.C.P. Art. 11.07) for an out-of-time (PDR) Petition For Dicretionary Review.

## Statement of The Case

- Applicant was indicted for the offense of aggravated robbery (first degree felony). Applicant entered a plea of not guilty before the Hon. Bradley Underwood in the 364th Judicial District Court of Lubbock County, Texas to cause No. 2011-431,252.

- Applicant was found guilty by indictment of aggravated robbery (Law of parties /co-defendant Quinton Pendelton) on January 18-2015, and sentenced to forty five (45) years confinment at T.D.C.J.-I.D.

- Applicant is presently incarcerated at the Coffield Unit /T.D.C.I.-CID for the instant offense.

## Statement Of Procidurial History

January 18-2013 Applicant was found guilty by indictment of the offense of aggravated robbery (First degree felony) in the 364th Judicial District Court Lubbock County, Texas at Lubbock, Texas on cause No. 2011-431,252.

April 9-2014 The Seventh Judicial Court of Appeals affirmed the conviction. Balero V. State, No. 07-13-0008-CR (Tex. App. — Amarillo Tex. 2014) (Not designated for publication)

July 29-2015 The Court of Criminal Appeals of Texas granted relief to Applicant's Writ of Habeas Corpus under Art 11.07 T.C.C.P, on cause No. WR-83.525-01. After, filing a Habeas Writ for an out-of-time petition

<u>page Two</u>

for discretionary review.

August 18-2015 the Court of Criminal Appeals granted Applicants pleading for an extention of time to file His out-of-time petition for discretionary review (PD/069-15). Holding inter ali the time to file is extended To Nov. 25-2015. (TRAP Rule 68.1,c)

Ground For Review

Was the Evidence Insufficient to support The Jury's Verdic of Guilty.

Argument Of The Issue

The state claimed Applicant's sole issue is based on inconsistencies in alleged victum Daniel Castaneda [Castaneda] report to police. When he did Lie to police over Eric Paez (Paez) being in his vehicle at the time of the alleged crime. The state claimed Applicant fled on foot after the driver wrecked a white suv they were in. They were in, and caught shortly after.

Their evidence the state demonstrated at coart is as follows:

1) an assult rifle found in the white suv,

2)- an empty shell casing found at the scene of the crime,

3)- Vedeo showing part the acts,

4)- Corpral Jimmy Fairs testimony.

5)- Alleged Victimas-testimony and Paez testimony,

Castaneda testified a driver in a white suv passed him on the right. The driver then called in frant of him stopped causing a minor collision. The driver approached him

page Three

—demanding money due to the collision, and saw hes face when a red bandana the driver wore covering his face slid off. He also claimed the passanger of the white suv threatened him (did not identify the passanger who also covered his face with a red bandona) with a rifle which he fired over the roof of castaneda's car. Castaneda said he heard a click (miss-fire) when the driver told the passanger to shoot him. Castaneda testified he handed the driver a bottle holder with change telling the driver thats all the money he had. The driver slapped it out of his hand spilling the contents / bottle holder on the ground. Castaneda said he recieved a phone call to pick-up his daughter, and decided not to go to the bar but would pick-up his daughter. This occured in front of a bar.. He also affirmed his brother phoned his asking him to pick him up since he was drunk and wanted to go home. Erick Paez (Paez) testified he did not recall a gunshot fired or a phone call from Castaneda's brother, and testified a phone call to pick up hes daughter was made but he was not going to pick hes daughter up.

The State in her respond to Applicants appeal brief never refers to the court transcripts or reporter's record, and the 364th Judicial District of Court of Lubbock County, Texas adopted the respond and handed down its conclusion to Adopt the states denial in her original answer. The seventh Court of Appeals never refers to the record, also denied Applicant any

page four

relief

## Facts on Record

Reporter's Record (R.R), Volume (Vol.) 5, page (p) 137 - semi automatic rifle found in white suv.

RR, Vol. 5, p. 72-73 - Castaneda went to the wreck (advised by police at police department to do so). Claimed he was alone in the car to Corporal Jimmy Fair. see also RR 6, p's 130-161-160.

RR 6, p 95 - Erick Paez (Paez) testified he never heard a gunshot.
RR 6, p 50 - Castaneda said the gunshot fired was very loud.
RR 6, p 87-88 - Paez testified Castaneda recieved a phone call to go pick up hes daughter, but decided not to pick her up.

RR 6, 114, 139-140 - Castaneda testified he recieved a phone call to pick up hes daughter, but decided not to. Having other plans.

RR 6, 154-155 - Castaneda testified he recieved a phone call from hes brother who was drunk. His brother wanted him to pick him up claimed Paez knew this.

RR 6, p 187 - Paez claimed under oath they never recieved a phone call from from hes brother being drunk who wanted to go home.

RR 6, 139 - Applicant was found guilty of aggravated robbery.

RR 6, 142 - a white car passed Castaneda on the right side, stoped in front in front of castaneda's car causing a collision.

page five

RR 6, 122 - Castaneda police / testified he offer a cup holder with change in it, but the driver slapped it out of his hand, spilling holder and contents on ground.

RR 6, 121 - Castaneda testified got out of his car demanding money.

RR 6, 122 - Castaneda testified the passanger was told by the driver to shoot them, but had trouble with gun.

RR 6, 95 - Paez testified he did not hear a shot fired.

RR 5, 26-30 - when suv drove off Castaneda followed the suv who called police giving them the License plate number. The police advised him to go to the police station. Coporal Jimmy Fair (Police officer) Located the car discribed (white suv) and a chase ensued. The suv ended up having a wreck. The driver ran from the scene and caught after a chase on foot. Applicant would be arrested at the wrecked car and did no run.

A review (de novo) of the record and video (its entirety) reveals Applicant never fled from the scene of the crime on foot as voiced by the state to the jury. He was arrested at the wreck by Officer Fair. The shell casing found at the scene of the alleged crime could have fallen from the suv (white car), when one of the occupants got out. What was not found was the bottle holder or contents (change) Castaneda claimed was slapped out of his hand. Fingerprints were

page six

found on the rifle belonging to Applicant. Applicant was present at the wreck. Yet, it was never revealed if other fingerprints were found. Testing for gun residue was not practiced on Applicants hands. The states Response adopted by the district court pages. page 7; The seventh Court of Appeals memorandum page 3 claim Applicant abandoned the Vehicle on foot + He was chaced by police and was arrested. The record does Not reflect this. Also, its claimed that Castaneda only Lied once the fact state different see pages 5/6. Castaneda neve clamed Applicant approched him with a rifle nor anyone else.

. There was a Lapse of time from the time Castanieda stoped following the white car and when Officer Fair chased them in his car. Applicant claims that when the car wreck occured He was asleep. The driver is the only one who committed a crime he stopped causing a collision, demanded money, talked, drove off, and took off running from the wreck. Who was with him it was Never established Applicant was at the scene of the crime only at the wreck.

On a claim of insufficient evidence the appellate court reviews all the evidence on record. The review will be in the Light most favorable to the verdict to determine if the trier of facts (jury) could have found the essential elements of an offense beyond a reasonable doubt. Jackson V. Virginia, 99 S. Ct. 2781 (1979); Brooks V. State, 323

page seven

3rd 893, 912 (Tex. Crim. App. 2010). Only that evidence sufficient to support a conviction beyond a reasonable doubt is adequate Id Brooks, 323. In reviewing all the evidence under the Jackson standard the ultimate question is whether the jury's finding of guilt was a rational finding. This is not to include fabricated events that did not take place as claimed by the state in the instant case or Lies from state witnesses. Further, Applicant was never identified as being the perpetrator with a rifle. Only falsely accused of fleeing from not the scene of the alleged crime but from an auto wreck that happened at another location.

~ The States position in its original response was a blatant attempt to invite the reader to speculate on what was not on the record (see page 5 states original answer Brief "flight from the scene of an offense or from police is at least a strongly suggestive of the persons consciousness of guilt); (page 7 states original answer Brief "Appellant and his codefendant fled, indicating their guilt"); That was adopted by the state (see Appendix A, memorandum Opinion page 3 "The driver and Applicant both abandoned the vehicle, and a foot chase resulted in both being captured shortly thereafter"). Matter not in the record is clearly improper. Injecting speculation is even more dangerous be-

cause it Leaves to the imagination of each juror what ever extraneous facts may be Needed to support a conviction. Logical deductions from evidence do Not permit within the standard of Logical diductions from Non-evidence, see _Everett V. State, 707 at 641_ (emphasis added), quoting) _Berryhill V State, 501 s.w. 2d 86-87 (Tex. Crim. App. 1973)_; _Cooks Vs State, 844 s.w. 2d 697, 728 (1992)_

In the instant case there is Not DNA, but arriving from severaL factors. Factors that were Not truthfully considered, sought, or deligently Look-ed into along the way but rather altered, and mainuvered to supress-edly sait position. First handedLy by the overseeing power of assigned authority, to the extent of pre-exploitation and manipulation, situa-tion, and persona wise. Accumulative in fallacy while turing a bLind eye to the truth only to aid the vardict of guilt.

Prayer

AppLicant prays for reLief from an unLawful conviction, and this remand this case for an evidentary hearing to seek out the truth.

RespectfuLly Submitted

_Joey Balero_     executed / signed on Nov. 18-2015

Joey Balero # 1848915

pro se: AppLicant

page NiNe



## In The
## Court of Appeals
## Seventh District of Texas at Amarillo

No. 07-13-00088-CR

JOEY BALERO, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
(      Lubbock County, Texas
Trial Court No. 2011-431,252, Honorable Bradley S. Underwood, Presiding

April 9, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Joey Balero, was indicted for the offense of aggravated robbery[1] enhanced by a prior felony conviction.[2] The jury found appellant guilty of the offense of aggravated robbery. Appellant elected to have the trial court determine punishment. The trial court found the allegations contained in the enhancement paragraph "True" and sentenced appellant to confinement in the Institutional Division of the Texas

---

[1] See TEX. PENAL CODE ANN. § 29.03(a)(2) (West 2011).

[2] See id. § 12.42(c)(1) (West Supp. 2013).

Department of Criminal Justice (ID-TDCJ) for 45 years. Appellant appeals contending that the evidence was insufficient to support the jury's verdict. We will affirm.

## Factual and Procedural Background

On April 24, 2011, Daniel Castaneda was driving on Buddy Holly Avenue when a white SUV passed him on the passenger side of his vehicle. As Castaneda attempted to enter a turn lane, the white SUV suddenly veered in front of him and stopped abruptly. Castaneda attempted to stop, but ended up colliding at slow speed with the rear of the SUV. The driver of the SUV got out and came to the driver's window demanding money from Castaneda. Appellant, who was a passenger in the SUV, exited the vehicle with a rifle, later identified as an "assault type weapon." Castaneda testified that the driver told appellant to shoot them. Castaneda testified that he heard the weapon click as if appellant had attempted to fire it. Appellant eventually got the rifle operational and fired a shot over the top of the car. During this time, the driver was demanding money from Castaneda. Eric Paez was a passenger in Castaneda's vehicle and testified he did not recall a shot being fired. After the shot was fired, the driver of the SUV and appellant got back in the SUV and left the area.

Castaneda followed the SUV, obtained the license plate number, and called 911 to report the incident. Castaneda was advised to stop following the vehicle and pull over and await the police. Castaneda subsequently was advised to go to the police station and did so. At the station, he was advised that the SUV had been stopped and was directed to the scene to talk to the investigating officers.

Corporal Jimmy Fair of the LPD had heard the call about the incident and located the SUV. A short chase ensued until the SUV crashed into a used car lot at the corner of 19th Street and Avenue N. The driver and appellant both abandoned the vehicle, and a foot chase resulted in both being captured shortly thereafter. After both suspects were taken into custody, a semi-automatic rifle was located in the SUV. Also located in the SUV were two red bandanas. Castaneda later testified that both the driver and appellant were wearing red bandanas at the time of the incident.

At the scene of the incident, the LPD located a witness, Jimmy Sandoval, who saw part of the incident and heard the shot fired. He assisted an LPD officer in locating a spent shell casing that, later testing revealed, had been fired by the semi-automatic rifle that was recovered from the SUV. Sandoval also alerted the police to the fact that the security cameras from a night club located at the scene might have recorded the incident. The security camera footage was recovered by the LPD and was played before the jury. The security camera footage showed Castaneda's vehicle and the SUV. The footage also showed some sort of interaction with the occupants of the SUV and the occupants of Castaneda's vehicle. However, the security camera footage did not record any audio and the shot could not be heard. Yet, patrons of the club could be seen scurrying for cover, indicative of a shot having been fired.

Appellant pointed out, during cross-examination of Castaneda, that Castaneda had never told the police that Paez was a passenger in the vehicle. In fact, he denied that anyone was in the vehicle with him, both at the time of his initial interview at the scene of the apprehension of appellant and later in a recorded statement to a detective. Paez testified that he had outstanding warrants for his arrest for traffic offenses and had

3

told Castaneda that he could not be involved. All of these facts were testified to before the jury.

After hearing all of the evidence, the jury convicted appellant of the offense of aggravated robbery. Appellant elected to have punishment determined by the trial court and, after hearing the punishment evidence, the trial court assessed appellant's punishment at confinement in the ID-TDCJ for a period of 45 years.

Appellant appeals his conviction in a single issue. Appellant contends that the evidence was insufficient to support the jury's verdict of guilty. We will affirm the judgment of the trial court for the reasons hereinafter set forth.

## Sufficiency of the Evidence

### Standard of Review

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Id.* When reviewing all of the evidence under the *Jackson* standard of review, the ultimate

question is whether the jury's finding of guilt was a rational finding. *See id.* at 906–07 n.26 (discussing Judge Cochran's dissenting opinion in *Watson v. State*, 204 S.W.3d 404, 448–50 (Tex. Crim. App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Id.* at 899.

Analysis

To prove the allegations in the indictment, the State had to prove that: 1) appellant, 2) in the course of committing theft, with intent to obtain or maintain control of said property, 3) intentionally or knowingly, 4) placed Daniel Castaneda, 5) in fear of imminent bodily injury or death, and 6) while using or exhibiting a deadly weapon, to-wit: a firearm.

Appellant's sole argument against the sufficiency of the evidence is based upon inconsistencies in Castaneda's reports to the police about whether anyone was with him on the night of the incident. Relying on this fact, appellant contends that Castaneda's testimony was not believable. The testimony reveals that this fact was pointed out to the jury during both the testimony of Paez and Castaneda. As such, it was then up to the jury to determine whether they thought either witness was a credible witness. *See Brooks*, 323 S.W.3d at 899. We defer to the jury's determination on questions of credibility. *See id.*

Further the record reveals that a minor collision occurred involving Castaneda's vehicle and the SUV, and that:

1) Appellant and the driver of the SUV approached Castaneda's vehicle. The driver immediately started demanding money.

2) Appellant approached the vehicle carrying a semi-automatic weapon.

3) When Castaneda told the driver he did not have any money to give him, the driver told appellant to shoot them.

4) Appellant apparently pulled the trigger once but nothing but a click was heard.

5) Appellant then chambered a round and fired over the top of Castaneda's vehicle while the driver continued demanding money.

6) Both the driver and appellant were wearing red bandanas over their faces.

7) The driver's bandana slipped and Castaneda was able to notice certain distinguishing features of his face, to-wit: gold teeth, small tattoos, and short dread-lock type hairstyle.

8) The driver and appellant fled the scene and Castaneda was able to obtain the license plate number of the SUV.

9) Corporal Fair spotted a vehicle matching the description and began trying to stop it.

10) The SUV crashed and the driver and appellant were both apprehended, almost immediately.

11) Located in the SUV was a semi-automatic weapon and two red bandanas.

12) The driver's appearance matched the description that Castaneda provided, to include: gold teeth, small tattoos, and short dread-lock type hairstyle.

13) Sandoval, witness at the scene of the aggravated robbery, assisted police in finding the spent shell casing.

14) Sandoval testified about hearing the shot being fired.

15) Test of the shell casing revealed it had been fired by the semi-automatic rifle found in the SUV.

16) The security cameras located at the scene showed the confrontation between the driver, appellant, and the passengers in the Castaneda vehicle.